324

WARD, APPEAL, IN RE ZINDABAD.

Ohio State Racing Commission.

No. 63.

HARRY M. HOFFHEIMER, CHAIRMAN. This cause came on for hearing pursuant to an appeal filed on June 28, 1963, by John T. Ward, a licensed owner of a horse named Zindabad, from a ruling of the board of stewards at River Downs, Inc., which altered the original official order of finish of the second race

on June 19, 1963, at River Downs, wherein Zindabad was declared the winner and a horse name One-W, owned by Dr. Lawrence M. Quill, was second; said stewards' ruling resulting in disqualifying Zindabad, placing One-W first, and redistributing the purse money.

The appellant was not present at the hearing on his appeal nor was he represented by counsel, but he requested that the appeal be heard in his absence, and his interest was represented by Herbert K. Stevens, trainer of the horse Zindabad. Dr. Quill was present, and counsel was present on behalf of River Downs, Inc., while the Commission was represented by Mr. Clark Redick, Assistant Attorney General.

Mr. Stevens testified that Zindabad was a five-year-old maiden (that is, a horse which has never won a race) owned by Mr. Ward, trained by Stevens, and the winner of the second race on June 19, 1963, an open race for four-year-olds and upward, nonwinners in 1963, with a claiming price of $1500.00. After the race the stewards ordered Zindabad's purse forfeited and redistributed. According to Stevens, he told the stewards the day before the race that Zindabad was a five-year-old maiden and that he intended to run the horse the following day, to which Lincoln Plaut, one of the stewards, replied, "You can't run him." Thereupon Stevens, who told the stewards that there was no rule against the horse running, went to Frederick G. (Pat) Farrell, the racing secretary, and told him that he was going to enter a five-year-old maiden for a race the next day. Stevens said that Farrell replied, "Go ahead." Stevens entered the horse, stating that it was a five-year-old maiden. The horse won; the race was made official, and mutuel payoffs were made on the basis of its victory. The following day Stevens was called to the Stewards' office on the objection of Dr. Quill, and Mr. Plaut said he did not know at the time of the race that there was a five-year-old maiden running. The stewards then sustained Quill's appeal and denied the purse to Zindabad for the stated reason that the horse was not eligible at the time of entry under Ohio State Racing Commission Rule No. 187, which reads as follows:

"A horse must be eligible to start at time of entry."

The basis for this position taken by the stewards was a

supposed track rule which appeared on the application blank for stall space at River Downs as follows:

"Maiden five-year-olds or older are not eligible to start and will not be allotted stalls for either meeting."

In the River Downs condition book for the period in question under the heading "Ohio State Racing Commission and Track Rules," the following appears: "No stalls will be allotted to Maiden 5-year-olds or older." There is no Commission rule prohibiting five-year-old maidens from racing.

Stevens further testified that in 1962 he, together with Farrell, had gone to the stewards, who agreed that five-year-old maidens could start despite a notice on the stall application blank that such horses would not be granted stalls, and that a notice on the bulletin board had thereafter been posted permitting such horses to race. He said that this posted waiver of the restriction had neved been rescinded so far as he knew and that since Zindabad's victory other five-year-old maidens had been permitted to start and have won in 1963. He added that Leon A. Slavin, president and general manager of River Downs, Inc., was the man who inserted the condition on the stall application and told Farrell to allow Zindabad to run; Slavin also told Stevens that he did not agree with the ruling of the stewards.

Lincoln Plaut testified that in Stevens' conversation with the stewards on June 18 he did not mention the name of the horse which he was proposing to enter, that when Stevens said he was going to enter the horse Plaut replied that he had better not do so because the racing secretary would take it out because of its ineligibility. He did not know in what race Stevens contemplated entering the horse. Mr. Plaut further testified that it is not a function of the stewards, but of the racing secretary and his staff, to check the horses in a race although stewards sometimes question the eligibility of a horse. He did not know that Zindabad was in the race until it was actually being run. Immediately after the race Dr. Quill telephoned the stewards to protest and was advised that a protest was required to be in writing, whereupon a written protest was filed and the hearing held. The witness stated that Zindabad did not come on the grounds until June 15 and that no name had been sub-

mitted to the stewards for checking. He also observed that on June 8 a five-year-old maiden had been ordered from the grounds and that although a notice dated June 21, which allowed five-year-old maidens to run, was posted, no such notice existed on June 18 or 19. He stated that there had been such a notice posted in 1962 but that the regulation as to stall space had been reinstated for 1963 until June 21. In response to a question whether Zindabad was eligible for the race according to its stated conditions, Mr. Plaut replied that it was. He added that he had had no information that a five-year-old maiden had been entered and that it is the duty of the secretary to notify the stewards when an ineligible horse is entered so that the stewards may then order it to be scratched.

Henry H. Moeller testified that he was clerk of scales at River Downs and as such accepted entries for races, that when Zindabad was entered, the restriction with regard to five-year-old maidens "escaped me entirely"; he knew it was on the stall application form but did not see it in the condition book. He recalled Stevens entering the horse but did not know whether it was a maiden or not—it was eligible for the race, and it was not within Moeller's jurisdiction "to pull the horse out."

Jack G. Goode, a steward at River Downs, testified that when Stevens came to the stewards and discussed the matter of a five-year-old maiden, he argued with Plaut that there was no rule against the running of such horses. Mr. Goode did not recall that the horse's name was mentioned. Plaut told Stevens of the regulation contained in the stall application and condition book and said that if Stevens entered the horse, "they will take him out." Mr. Goode knew that the horse was a five-year-old maiden upon checking the form sheet the morning of the race and went to the office of the racing secretary to see if the rule had been changed. Mr. Farrell was not in his office, and Goode thereupon forgot about the matter until the horse was at the gate for the race. Later he ascertained that management had changed the rule the afternoon of the race. Within five to fifteen minutes after the completion of the race Dr. Quill telephoned to object. Mr. Goode stated that he did not know who would be empowered to change the rule in question and stated that the stewards did not do so. He declared that

it was the primary duty of the racing secretary to investigate the eligibility of horses although the stewards endeavor to check this also. He said that he would have ordered the horse out of the race if he had seen Mr. Farrell and Farrell had told him that the rule had not been changed. He did not know who makes and changes track rules. To his knowledge there was no date on which the 1962 notice permitting five-year-old maidens to race was terminated, but he stated that no other five-year-old maidens had been permitted to run in 1963 from the beginning of the meeting on May 24 until the date of the race in question, June 19.

Frederick G. Farrell, the racing secretary at River Downs, testified that on June 18 Stevens told him that he was going to run a five-year-old maiden, whereupon Farrell said, "If you do, I am going to take him out." Stevens then said that he had just talked to the stewards and when asked by Farrell if he had told the stewards of his intention to run the horse, he answered in the affirmative. Farrell then said to Stevens, "All right. That takes it out of my hands." The racing secretary added that normally it would be up to him to check the eligibility and take out a horse where there is a conflict with track rules, but "as he had taken the matter up with the stewards, that usurps my authority." Farrell presented an affidavit by John T. Breen, Jr., assistant racing secretary, to the effect that at 8 a. m. on June 19 Breen was called to the stewards' room and was asked what he wanted to do about the scratching of Zindabad because it was a five-year-old maiden and that he responded that that was the business of the stewards. Farrell continued that about noon on June 19 Mr. Slavin called and asked him, what are "we" going to do about the five-year-old maiden? Farrell replied that it was a problem of the stewards because Stevens had put it in their hands. Mr. Slavin stated that it was a problem for management because "That is my rule . . . Well, let's let him run . . . You put up a notice and we will let all the other five-year-old maidens that are on the grounds run." The decision to change the rule was made by Mr. Slavin prior to the race, and Farrell considered Slavin's oral statement as abrogating the rule. He said that track management adopts the track rules and that the racing secretary has nothing to do with this except for the

making of suggestions. The rule was still in effect when the horse was entered, and the horse was eligible for the race. However, under the track rule it was ineligible, but the general manager said to let it run.

Dr. Lawrence M. Quill, Newport, Kentucky, a surgeon and horse owner, testified that he was the owner of One-W, which ran second to Zindabad, that he complained to the stewards by telephone after the *Racing Form* showed Zindabad to be a five-year-old maiden. He checked the foal certificate of Zindabad and wrote a letter to the stewards, quoting the rule which appeared on the application for stall space, knowing that at least one five-year-old maiden had previously been ordered off the grounds. He stated that Slavin told him, "You are not going to win the protest because I changed the rule." A notice of change of rule appeared on the bulletin board the day after the race. Dr. Quill was unable to attend the stewards' meeting, but a decision was made to give the winner's purse to One-W. Dr. Quill stated that the rule remained in a later condition book at River Downs despite the posting of the notice referred to and added, "There is a difference between five-year-old maidens. Some they want and some they don't want. I think that is the reason they keep the rule on, off and on, according to their desires at the time." He stated that the purse had been placed to his account with the horsemen's bookkeeper at the track.

The Commission has been in some perplexity regarding both the question of its jurisdiction in this matter and the possible effect of whatever decision it may render. No precedent in this or any other state has come to the Commission's attention in relation to its power to take jurisdiction of an appeal from a decision of the stewards at a race track based upon an interpretation or violation of an alleged track rule as distinguished from a rule of the Commission (as to the determination of appeals involving the latter type of rule the Commission's authority is well recognized). It may be noted that Rule 132 of the Ohio Rules of Racing, adopted by this Commission, provides that all entries and declarations shall be under the supervision of the stewards and that they may refuse entries and that Rule 121 gives the stewards the responsibility of determining "all questions with reference to racing arising

during the meeting.'' Rule 173 permits the stewards to penalize failure to comply with requirements as to the making of an entry of a horse and declares that an objection to noncompliance, if sustained, may cause the forfeiture of any winnings to another horse. Throughout the rules relating to the duties of the stewards there appears to be implicit, if not explicit, recognition that their actions and decisions are subject to the control and review of the Commission. Furthermore, Rule 330 of the Ohio Rules of Racing reads as follows:

''Any person fined, suspended, expelled, ruled off or otherwise aggrieved by any ruling in the application of the rules of racing may appeal to the Commission for a review of the decision. Such appeals shall be made in writing, and until they can be considered and disposed of by the Commission, the rulings shall be in effect. The Chairman of the Commission may appoint a referee to hear such appeals.''

This rule clearly seems to envision such an appeal as the one now under consideration. In addition, the Regulations Governing the Proceedings of the Commission, adopted by the Commission along with and prefixed to the Ohio Rules of Racing, provide for an appeal to the Commission by ''any person, licensed by the Commission, who is fined, suspended or ruled off by a steward, judge, or other official of a Permit Holder.'' Although appellant Ward was not suspended or ruled off, the withholding from him of the winner's purse may be classified as a ''penalty or forfeiture,'' which is one of the dictionary definitions of ''fine.''

Of course, neither the Commission's regulations nor its own rules can grant jurisdiction to it but can only recognize such jurisdiction as may have been accorded explicitly or by implication by the Ohio General Assembly. Section 3 of the Horse Racing Act (Section 3769.03, Revised Code), provides in part as follows:

''The state racing commission shall prescribe the rules, regulations and conditions under which horse racing may be conducted, and may issue, deny, suspend, diminish, or revoke permits to conduct horse racing as authorized by Sections 3769.-01 to 3769.14, inclusive, Revised Code.

''The state racing commission may issue, deny, suspend

or revoke licenses to such persons engaged in racing and to such employees of permit holders as is in the public interest for the purpose of maintaining a proper control over horse racing meetings. License fees shall be set by the commission and each such license, unless revoked for cause, shall be for the period of one year from April first of the year in which the same shall be issued. Any violation of Sections 3769.01 to 3769.99, inclusive, Revised Code, or of any rule of racing adopted by the commission or of any law or rule with respect to racing in any jurisdiction shall be sufficient reason for a refusal to issue a license, or a suspension or revocation of any such license issued pursuant to this section.''

The power to review decisions of all track officials, whether based upon Commission rules or not, would appear to be implicit in the Commission's statutory function of ''maintaining a proper control over horse racing meetings.'' Such supervisory jurisdiction is a matter of necessity. In its absence track rules, or interpretations of them by stewards, could conflict not only with those of other tracks in the state but with the rules which the Commission is authorized by statute to make and enforce. Although the Commission recognizes that the stewards have special competence in judging the actual running of a race and determining whether there have been infractions of the rules by animals or riders and although it would be most reluctant to substitute its judgment for that of the officials in such a case; yet when there is a question of the interpretation or validity of a rule, the expertise of the track stewards or judges is not involved and the opinion of the Commission may be rendered without diffidence. In a case of this type there can be little doubt of the need of review—and hence *ex necessitate rei* of the power to make the review.

It is true that the extent to which the decision on this appeal may be enforceable or effective may be questionable. The Commission recognizes that its functions do not include the rendering of a civil judgment, but since Mr. Ward has filed an appeal and since he had the right so to do, it has appeared to the Commission better for it to make a determination of the issue presented, for whatever it may be worth, than to shirk its possible responsibility in this connection. A party to possible future civil litigation will, at least, not need to concern

itself with meeting an assertion that it had not exhausted its administrative remedies. Furthermore, entirely apart from the problem of the distribution of the purse money, there is the question, which can affect others having no present interest in this appeal and which seems to be particularly within the cognizance of the Commission in its function of controlling racing, of determining the status of Zindabad. Shall the horse continue to be classified as a maiden, or has it been a winner in 1963?

On the merits of the appeal it is readily evident that, save from the possible effect of the supposed track rule, Ward as the owner of Zindabad was entitled to the winner's purse since the horse was eligible according to the express conditions of the race and was first across the finish line. Inasmuch as there is little doubt that a properly adopted and enforced track rule could prevent a horse from starting and could affect the outcome of a race, the question remains whether such a rule was in effect on June 19, 1963. The evidence discloses that there had been no formal adoption of a rule forbidding the racing of five-year-old maidens but shows only that so-called track rules were adopted and rescinded simply by order of Mr. Slavin, the president and general manager, without any participation by other track officials, including the stewards, who are by Commission rules charged with supervision of the races. The only indication that any such rule was in force on the date in question was the printed statement on the stall application (which owners of horses stabled off the grounds might never see) that maiden five-year-olds or older "are ineligible to start" and would not be allotted stalls (the statement in the condition book referred only to stall space and did not purport to forbid entry of the horses). Under the circumstances it cannot be said that an effective rule existed which could have barred Zindabad's entry. If the contrary were true, however, it would be apparent that the rule was "more honored in the breach than in the observance" and that in the instant case it was expressly waived. Although there was testimony that the so-called rule had been enforced for the first few weeks of the 1963 season at River Downs, there was unanimous agreement that a posted notice abrogated any effect it might have

had both during the 1962 season and for the remainder of the 1963 season following Zindabad's victory. On the day of the disputed race Mr. Slavin, according to the racing secretary, himself directly removed any restriction there may have been when he said to let the horse run and to let all the other five-year-old maidens on the grounds run (thus recognizing that stalls had been granted to other winless mature equines despite the notice on the application form). Furthermore, both the racing secretary and the stewards had been informed in advance by Stevens of his intention to enter a five-year-old maiden. Under the circumstances it is immaterial whether or not he mentioned the horse's name to these officials, who (despite a surprising amount of uncertainty among themselves as to their functions and duties relating to the rejection of entries and the scratching of horses from races) between them possessed the track's entire jurisdiction with respect to the accepting of horses in and the barring of them from races because of ineligibility.

The racing secretary and the stewards either knew, as in Mr. Goode's case, or should have known that Zindabad was a five-year-old maiden even if the trainer had not warned them in advance of his intention. The information appeared in the *Daily Racing Form*, a national, officially recognized publication which is constantly perused by officials at race tracks, and if it was apparent to Dr. Quill no later than a few minutes after the finish that Zindabad was a maiden and five years of age, it should have been evident to the stewards and racing secretary before the horses went to the post (The affidavit of the assistant racing secretary, Breen, states that the matter of Zindabad's eligibility was specifically discussed by the stewards at 8 a. m. on the date of the race, but it is not necessary to take this into consideration). The conclusion is therefore inescapable that if there ever was any track rule which would have barred appellant's horse from competing in the race, such rule was withdrawn or waived before the race was run. Indeed, with the information available to the officials and the advance notification they had received from the trainer, it could well be argued that the acceptance of Zindabad's entry was itself a waiver of any such rule, in which event Commission Rule 187 could have no possible relevancy.

The appeal is sustained, and the ruling of the stewards is reversed.

### ORDER

The appeal of John T. Ward, owner of the horse Zindabad, from a decision of the stewards at River Downs dated June 21, 1963, relating to the second race on June 19, 1963, at said track is sustained; the said stewards' decision is reversed; the original order of finish in said race, wherein Zindabad was the victor, is sustained as official, and the purse distribution should be made accordingly.

OHIO STATE RACING COMMISSION
Harry M. Hoffheimer, Chairman
Garrett S. Claypool, Member
James V. Sawyer, Member
John E. Elder, Member
James White, Member